## Brodsky et al. v. McShain et al.

*P. S. Polis*, for plaintiffs.

*G. Coe Farrier* and *F. F. Truscott*, for defendants.

GORDON, JR., P. J., April 14, 1948.—This is an appeal by protesting neighbors from the action of the Zoning Board of Adjustment (hereafter called the board) in granting a certificate of variance to intervening defendants, owners of 4915 Wynnefield Avenue, which is situated at the northwest corner of Wynnefield Avenue and Monument Road in the City of Philadelphia. The variance was asked for by the intervening defendants because a portion of the dwelling located on the property is only 55 feet from the lot immediately adjoining it on the north, and defendants desire to con-

vert the dwelling for use as a nursing home for convalescents. Section 7(21) of the Zoning Ordinance of August 14, 1933, ordinances of the City of Philadelphia, page 268, governing "A Residential" districts, provides that: "hospitals, sanitaria, eleemosynary, and public institutions (other than correctional) shall be located at least seventy-five feet from any adjoining lot or lots". A large number of owners of residences in the immediate neighborhood of the property in question protested the granting of defendant's request at the hearing held by the board, which, after consideration of the matter, granted the variance. Protestants then took the present appeal, and, as the testimony taken before the zoning board was not reported, it was necessary for us to hear the testimony anew; from which we now make the following

### Findings of Fact

1. By agreement of sale, dated August 18, 1947, intervening defendants, Nathaniel H. Kotin and Margaret Kotin, acting through a straw party, purchased premises 4915 Wynnefield Avenue in the City of Philadelphia for $19,500 and made final settlement therefor on October 16, 1947.

2. The sole purpose of the intervening defendants in purchasing the property was to use the same as a nursing home for convalescents.

3. Being unable to use the property for the purpose for which it was bought without securing a certificate of variance from the zoning board of adjustment, intervening defendants applied, on September 16, 1947, approximately one month after the property was purchased by them, for such a certificate to the board. On September 30, 1947, the board granted the same, and, on October 24, 1947, plaintiffs, protesting neighbors, appealed to this court from the grant of the variance.

4. The certificate of variance which the board granted permitted the use of the dwelling now on the

property as a nursing home for convalescents, although its use for that purpose will be in violation of section 7(21) of the Zoning Ordinance of 1933 of the City of Philadelphia because a part of the northern portion of the building is 55 feet from the adjoining lot on the north, rather than at least 75 feet therefrom, as required by the section.

5. The neighborhood where protestants and premises 4915 Wynnefield Avenue is located is a high grade, quiet, residential community, consisting principally of detached single family dwellings.

6. For the past 28 years premises 4915 Wynnefield Avenue has been used only for residential purposes, as a one-family dwelling.

7. Premises 4915 Wynnefield Avenue consists of two buildings, the smaller of which, a garage, is two stories in height, containing on the upper floor a two-room apartment and bath, situated five feet from the next party line, and a large three-story building one side of which is situated 55 feet from the nearest party line.

8. Intervenor defendant proposed to alter premises 4915 Wynnefield Avenue on the exterior by the addition of a three-story fire escape on the north side which faces the adjoining property on Monument Road. As a convalescent home, the building will house approximately 20 patients, who will require personnel of about 10 in number to take care of them.

9. The operations of the convalescent home will include: Boarding sick people; relatives and friends visiting the patients; patients will use the porches and lawns, and ambulances and cabulances will bring the patients to the home. No surgery or special treatment will be provided; no tubercular cases will be handled nor will it be a health resort.

10. Intervenor defendant has not offered the property for rent or sale, and refuses to sell it regardless of price.

11. There is reasonable ground for apprehension that the use of the premises as a convalescent home would adversely affect real estate values of properties in the immediate vicinity, and would tend to make the immediate vicinity less desirable for residential purposes.

12. On September 30, 1947, the Philadelphia Zoning Board of Adjustment granted a certificate of variance for a convalescent home because "an unnecessary hardship would be imposed upon the owner if the strict requirements of the ordinance as to distance from house line to party line are enforced".

13. On Wynnefield Avenue from the south side of Parkside Avenue to Monument Road, there are two very large dwellings occupying a city block, which for upward of six years past have been used as nursery schools for small children of residents of the neighborhood. These schools are in use only five days a week from 9 in the morning to 3 in the afternoon without any overnight or sick pupils. The schools are not in use Saturday or Sunday. This use is not a violation of the provisions of the zoning ordinance governing "A Residential" districts.

14. All of the land in the "A Residential" district here in question is being used by the owners thereof in compliance with the terms of the zoning ordinance, with the possible exception of a dwelling house directly across Wynnefield Avenue from intervening defendant's property, which appears to have been converted to use as a five-family dwelling, in violation of law, and without the apparent knowledge of most, if not all, of protesting appellants.

### Discussion

Two questions are raised by this appeal: First, whether a private nursing home for convalescents is a hospital within the meaning of section 7(7) of the

zoning ordinance, which permits in an "A Residential" district hospitals, sanitaria, eleemosynary, and public institutions (other than correctional), provided any such use is not prejudicial to the public health and welfare; and, second, if it is, whether the board of adjustment acted in this particular case within its discretionary powers in granting to defendant owners a certificate of variance permitting the use of the property as such a home, notwithstanding the building on it is so located that it violates section 7(21) of the ordinance, which requires that, in "A Residential" districts, all such institutions shall be located "at least seventy-five feet from any adjoining lot or lots".

With respect to the first of these questions, there is nothing in the language of the sections quoted above to indicate a councilmanic intent, by differentiating between the various kinds of "hospitals" that furnish therapeutic service, to permit one kind to operate in "A Residential" districts and prohibit another; except, of course, in the case of hospitals, such as those for contagious diseases, which are prejudicial to public health and welfare. This being so we are unable to follow the reasoning of the learned council for plaintiffs in asking us to hold that a nursing home for convalescents is not a hospital within the meaning of the ordinance. A hospital is an institution in which the sick and injured are given medical and surgical care and treatment; it is maintained for the temporary reception and treatment of the sick during their illness and until they return to their own homes. The type of care and treatment given may vary from establishment to establishment, depending upon the nature and stage of malady each establishment is equipped to handle. Such institutions are plainly within the generic term "hospital"; and among them is, clearly, a nursing home for convalescents, which gives those on the road to complete recovery the further medical at-

tention and treatment which they still require before returning to their homes.

There are no Pennsylvania cases which directly decide whether a private home for convalescents such as that which defendants intend to conduct can be established in a district in which "hospitals, sanitaria, eleemosynary, and public institutions" are permitted. The nearest case to that question, and the one most strongly relied on by plaintiff is Hasley's Appeal, 151 Pa. Superior Ct. 192. That case is not in point, however, for it merely decides that a private "nursing home" is a business, and hence could not be maintained in a district in which, under the ordinance there in question, *only* one-family and two-family dwellings, double houses, churches and the like are permitted "together with uses accessory thereto, provided such accessory uses do not involve the conduct of a business". Hospitals were entirely omitted from the list of permissive uses enumerated in the ordinance in the Halsey case. Here they are expressly allowed, without limitation as to their character, or distinction as to whether they are operated charitably or for profit, and we can find nothing in the ordinance to justify the reading of such a distinction into it. This is especially so since section 7 of the ordinance permits a number of uses having commercial characteristics, such as offices of physicians, farms, nurseries, greenhouses, and railroad stations. Although this view that the term "hospital" includes a nursing or convalescent home has not been directly ruled in this State, it has been supported by at least two decisions from other jurisdictions: Mayor and Council of Wilmington v. Turk, 129 Atl. 512 (Del. Ch. 1925), and Crain v. City of Louisville et al., 298 Ky. 429, 182 S. W. (2d) 787.

For the foregoing reasons we have no hesitancy in holding that the nursing home for convalescents which defendants propose to operate is a use permitted by

the Philadelphia Zoning Ordinance, and, except for the fact that the building in which it is to be operated is not so located on the property as to be at all points "at least seventy-five feet from any adjoining lot or lots", it would not have been necessary for defendants to secure a certificate from the Zoning Board of Adjustment.

This brings us to the second question raised by the appeal, namely, whether the board acted within its discretionary power in granting the variance as to the location of the building on the property. In considering it, it should be borne in mind that, on an appeal from an order of the board, the common pleas does not act de novo, but is limited to reviewing the action of the board in the light of the evidence, and can reverse such an order only if there has been an abuse of discretion by the board: Valicenti's Appeal, 298 Pa. 276; Perelman et al. v. Yeadon Borough Board of Adjustment, 144 Pa. Superior Ct. 5. The power to grant a certificate of variance is found in the Zoning Act of May 6, 1929, P. L. 1551, which, in section 8, provides, inter alia, that the board may do so when, "owing to special conditions, a literal enforcement of the provisions of the ordinance will result in *unnecessary hardship*, and so that the spirit of the ordinance shall be observed and substantial justice done". The discretionary power thus granted to the board has been held to be abused, whenever the evidence is insufficient to support a finding that an owner seeking a certificate of variance would suffer an "unnecessary hardship", if it were not granted: Kerr's Appeal, 294 Pa. 246; Devereaux Foundation, Inc., Zoning Case, 351 Pa. 478; Junge's Appeal (No. 1), 89 Pa. Superior Ct. 543. See also Ventresca v. Exley et al., 358 Pa. 98, in which Mr. Justice Stern emphasizes the necessity for proof of the existence of *"unnecessary"* hardship before the board's discretionary power to grant or refuse a variance

comes into operation. If there is any proof whatever of such hardship, a court cannot substitute its opinion upon the evidence for the board's and overrule the latter's finding upon that question. In the absence of such evidence, however, the granting of a variance is necessarily arbitrary and capricious, and cannot be sustained.

Applying these principles to the case before us, let us see whether there was evidence to support the board's finding that defendant owners would suffer an *unnecessary* hardship in being held to full compliance with the requirement of section 7(21) of the ordinance that a hospital "shall be located at least seventy-five feet from any adjoining lot or lots". Being a corner property, defendant's lot has adjoining lots on only the north and west sides. The building on it is generally rectangular in shape, with an 11-foot wide wing, or extension, on the northern or rear side, which projects 21 feet from the main structure to a distance of only 55 feet from the adjoining lot. The west side of the building also is only 40 feet from the lot adjoining on that side. In addition, a garage is erected on the northeast corner of the lot which is only five feet from the northern, and five feet six inches from the western lines of the property. In all other respects the building complies with the requirement of section 7(21) of the ordinance.

An actual inspection of the neighborhood makes it abundantly clear that the predominant feature of its development is that of the detached single-family dwelling. On the lot adjoining defendants' on the north is a detached single-family dwelling, which is used as such. The lot to the west is a golf course separated from defendants' lot by a belt of woods.

Defendants' lot is on the northwest corner of Wynnefield Avenue and Monument Road, and the building fronts on Wynnefield Avenue. Along both sides of Monument Road from Wynnefield Avenue to Forty-

ninth Street there are detached single-family dwellings. Directly opposite defendants' lot, on the southwest corner of Wynnefield Avenue and Monument Road there is another detached single-family dwelling, which is adjoined on the west by a five-family dwelling. This five-family dwelling is not a use permitted in an "A Residential" neighborhood, is apparently maintained in violation of the zoning ordinance, and is the only violation in the immediate vicinity. On the southeast corner of Wynnefield Avenue and Monument Road there is a private school, which is adjoined on the east by another private school, a use which is permitted in "A Residential" districts by section 7(5) of the ordinance. The apartment house at the corner of Wynnefield Avenue and Fiftieth Street which has been referred to in the testimony is in a different zone, and one in which such a use is permitted. So far as the evidence discloses, the Edwin Forrest Home, situated at Wynnefield and Parkside Avenues, and Christ Church Hospital are uses permitted in "A" districts, and neither violates the terms of the ordinance in any respect. All of the detached single-family dwellings in the neighborhood are large with fairly spacious, well-landscaped grounds surrounding them. The two private schools are located in what were formerly large single-family dwelings, the conversion of which took place approximately five or six years ago; they are well maintained and fit well into the general pattern of the neighborhood.

The character of this neighborhood is fixed and stabilized, and the single instance noted of a violation of the ordinance cannot justify a claim that there has been such a change in its general character as to make it an unnecessary hardship upon defendants not to permit them, by adding another violation, to further advance the neighborhood's deterioration. The practical result of so holding would destroy the very security

that zoning laws are designed to preserve, and render reliance upon them futile.

There can be do doubt from the testimony that the values of plaintiffs' properties will be affected. Defendants maintain, however, that such injury is immaterial, but Hollearn et al. v. Silverman, 338 Pa. 346 (1940), cited in support of this proposition, does not so hold. That case merely decided that depreciation of property values was not sufficient to give an equity court jurisdiction to enjoin the enforcement of a zoning ordinance on the ground that such ordinance was invalid. In addition, since the Zoning Act of 1929, supra, permits the board of adjustment to grant variances, where not contrary to the public interest and so that substantial justice would be done, the effect of a variance on property values would seem to be a necessary factor in all variance proceedings: Vide the attention paid by the court to depreciation of property values in Perelman v. Yeadon Borough, 144 Pa. Superior Ct. 5 (1941).

In the face of all this, what evidence was there that denial of the variance would result in an unnecessary hardship in this case? The attempt to show that the property was no longer suitable for residential purposes because of a change in character of the neighborhood and because of its large size utterly failed. The only circumstance advanced to support the contention that the size of the house makes it unsuitable for continued use as a residence is the fact that two very large houses in the neighborhood were converted to private schools within the last five or six years. This is not only a non sequitur, but it is also counterbalanced by the facts that defendants' property was utilized as a residence up to the time of its purchase by him, and that most of the houses in the district are about as large as his own. There is no evidence that sale of property in the vicinity is hard to accomplish

because the buildings are too big for normal occupancy, or even that defendants would be forced to take a loss on a resale of this very property. However that may be, one cannot complain of an undue hardship when he is not being deprived of the use for which a building was built and theretofore occupied: Kurman et al. v. Phila. Zoning Board et al., 351 Pa. 246; Junge's Appeal (No. 1), supra.

The only other possible ground for finding an "unnecessary hardship" is that in order to comply with the ordinance, defendants might have to spend money in remodeling their property. But certainly one who buys a property, which is at the time devoted to a permissible use, cannot create a hardship for himself by attempting to convert it to another use which he knew at the time of his purchase was not allowed in its existing condition. In such circumstances, to view the cost of making the necessary conversion as in itself a "substantial hardship" sufficiently compelling to justify the grant of a variance, would put it in the power of anyone to destroy at will all the protections of zoning regulations.

For the foregoing reasons we think the zoning board's order granting the certificate of variance in this case was not justified by the evidence, constituted an abuse of discretion, and should be reversed and set aside. Although the contemplated use is permissible in an "A Residential" district, there is no evidence of unnecessary hardship sufficient to justify the allowance of a departure from the 75-feet requirement of section 7(21) of the zoning ordinance. Contrary to the contention of the zoning board and intervening defendants, a variance as to area requirements must meet the same test as one with respect to use requirements: Junge's Appeal (No. 1) and Kurman et al. v. Phila. Zoning Board et al., supra.

Accordingly, the appeal is sustained, the order of the zoning board of adjustment appealed from is reversed, and the certificate of variance granted thereunder vacated and set aside.