590 A.2d 65

**MANOR HEALTHCARE CORPORATION**

v.

**LOWER MORELAND TOWNSHIP ZONING HEARING BOARD and Lower Moreland Township and Joseph M. Campbell, Thomas R. Campbell, Margaret B. Campbell, and the Sorrel Horse Civil Association, An Unincorporated Association.**

**Appeal of LOWER MORELAND TOWNSHIP.**

Commonwealth Court of Pennsylvania.

Argued March 5, 1991.

Decided April 15, 1991.

Joanne Steinke Faul, with her, Ross Weiss, Sherr, Joffe & Zuckerman, P.C., West Conshohocken, for appellants.

Thomas M. Guinan, Howland, Hess, Guinan & Torpey, Huntingdon Valley, for appellee.

Before PALLADINO and PELLEGRINI, JJ., and SILVESTRI, Senior Judge.

PELLEGRINI, Judge.

Lower Moreland Township (Township) appeals from an Order of the Montgomery County Court of Common Pleas (trial court) reversing a Decision of the Lower Moreland Township Zoning Hearing Board (Zoning Hearing Board) denying Manor Healthcare Corporation's (Manor) application for a special exception.

This action was initiated when Manor applied to the Zoning Hearing Board for a special exception and a variance [1] in order to construct a 48,100 square foot two-story "skilled nursing facility" within an "L" Residential District on a 8.5 acre undeveloped tract. Before the Zoning Hearing Board Manor contended that the skilled nursing facility qualified for the special exception because it was a "hospital or sanatorium" which is a permitted use when authorized by special exception in a "L" Residential District.[2]

---

[1]. The application was amended on December 14, 1988, withdrawing the request for variance and leaving only the request for special exception. (Reproduced Record (R.R.) p. 11).

[2]. Section 52 of the Township's Zoning Ordinance provides that any use permitted in an "R" Residential District is allowed in a "L"

Denying Manor's request for a special exception, the Zoning Hearing Board held that Manor's proposed skilled nursing facility was not a "hospital or sanatorium" but a "group home" which is not a permitted use within an "L" Residential District.[3] (R.R. pp. 362–394). Manor appealed the decision to the trial court which reversed the Zoning Hearing Board finding that the proposed facility was in fact a "hospital or sanatorium" and that Manor had met all of the terms and conditions required for a special exception. (R.R. pp. 403–426). The Township now appeals the trial court's Order.[4]

The Township contends that the trial court erred in finding that Manor's proposed skilled nursing facility was within the category of a "hospital or sanatorium" and not a "group home." The Township argues that the skilled nursing facility is not a "hospital or sanatorium" based on the limited type of medical care provided, but clearly falls within the definition of group home. The Township also contends that even if the facility could be classified as a "hospital or sanatorium", a special exception cannot be granted due to the clear showing that it will have a detrimental effect on the community. We disagree with the Township's contentions.

Before the Zoning Hearing Board, Manor contended that the proposed facility is a skilled nursing facility as opposed to a regular nursing home. (R.R. pp. 32–33). Chapter 201.3 of the regulations promulgated by the Pennsylvania

Residential District. (R.R. p. 442). Section 42 of the Zoning Ordinance provides that permitted uses in an "R" Residential District include "hospitals or sanatoriums ... when authorized as a special exception." (R.R. p. 440).

3. Section 65 of the Zoning Ordinance provides that "group homes" are a permitted use in an "M" Residential District if certain criteria are met for a special exception. (R.R. p. 449).

4. Our scope of review in a zoning appeal where the court of common pleas took no additional evidence is limited to a determination of whether the Zoning Hearing Board committed an abuse of discretion or an error of law. *Appeal of M.A. Kravitz Co., Inc.,* 501 Pa. 200, 460 A.2d 1075 (1983).

Department of Health for long term care facilities defines skilled care:

> *Skilled care*—Professionally supervised nursing care and related medical and other health services provided for a period exceeding 24 hours to an individual *not in need of hospitalization,* but those needs are such that they can only be met in a long term care facility on an inpatient basis, and who needs the care because of *age, illness, disease, injury, convalescence or physical or mental infirmity.* The term includes the provision of daily inpatient services that are needed on a *daily basis* by the patient, *ordered by a physician,* which require the skills of and are furnished directly by or under the supervision of technical or professional personnel, such as, but not limited to, registered nurses, licensed practical nurses, physical therapists, occupational therapists, speech pathologists or audiologists. The care would include *nursing, skilled rehabilitation* or a personal care service that because of a special medical complication of the patient require that the personal care services be performed by or under the direct supervision of *skilled nursing or rehabilitative personnel.*

28 Pa.Code § 201.3 (emphasis added).

The trial court found that the proposed facility was in fact a skilled nursing facility. (R.R. p. 419). Because the Township does not raise the validity of this finding on appeal, and since the Zoning Ordinance does not provide any district which explicitly permits a skilled nursing facility, the issue before us is whether a skilled nursing facility is a "hospital or sanatorium" which is a permitted use, or a "group home", which is not a permitted use in an "L" Residential District.

"Whether a proposed use, as factually described in the application and the testimony, falls within a given categorization contained in the zoning regulations is a question of law, on which the zoning board's determination is subject to review." *Merry v. Zoning Board of Adjustment,* 406 Pa. 393, 395, 178 A.2d 595, 597 (1962); *See also In re Appeal of*

*Ethken Corporation,* 89 Pa.Commonwealth Ct. 612, 493 A.2d 787 (1985).

Section 6(10) of the Zoning Ordinance defines a "group home" as:

> [A] residential facility used as a living quarters by a number of unrelated persons, which facility is required to be licensed under applicable state statutes and regulations. A group home must be authorized as a special exception in accordance with other provisions of the Zoning Ordinance.

(R.R. p. 429). However, the Zoning Ordinance does not provide a definition of "hospital or sanatorium".

Where a zoning ordinance does not provide a definition of a term, it must be given its usual and ordinary meaning. *Bakerstown Container Corporation v. Richland Township,* 508 Pa. 628, 500 A.2d 420 (1985); *Allegheny Valley School v. Zoning Hearing Board of Slippery Rock Borough,* 102 Pa.Commonwealth Ct. 290, 517 A.2d 1385 (1986). Where a court needs to define a term, it may consult definitions found in statutes, regulations or the dictionary for guidance, although such definitions are not controlling. *Interim House, Inc. v. Philadelphia Zoning Board of Adjustment,* 36 Pa.Commonwealth Ct. 54, 387 A.2d 511 (1978).

In order to determine the usual and ordinary meaning of these terms, we have consulted several sources. A comprehensive definition of "hospital" is contained in Section 1001 of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. § 1001, which defines a "hospital" as:

> [A]ny premises, other than a mental health establishment as defined herein, operated for profit, having an organized medical staff and providing equipment and services primarily for inpatient care for two or more individuals who *require definitive diagnosis and/or treatment for illness,* injury or other disability or during or after pregnancy, and which also regularly makes available at least clinical laboratory services, diagnostic x-ray services and definitive clinical treatment services. The term shall in-

clude such premises providing either diagnosis or treatment, or both, for specific illnesses or conditions.

62 P.S. § 1001.

Black's Law Dictionary also provide a definition of a "hospital" as:

An institution for the treatment and care of sick, wounded, infirmed or aged persons; generally incorporated, and then of the class of corporations called "eleemosynary", or "charitable". Also the building used for such purposes. Hospitals may be either public or private and be limited in their functions or services; i.e. children's hospital.

Black's Law Dictionary 664 (5th ed. 1979).

As for the definition of "sanatorium", Black's Law Dictionary defines it as:

A health retreat, or institution for the *treatment of disease or care of invalids.*

Black's Law Dictionary 1507 (4th ed. 1951) (emphasis added). Webster's Ninth New Collegiate Dictionary also defines "sanatorium" as:

an establishment that provides therapy combined with a regimen (as of diet or exercise) for treatment or rehabilitation; an institution for rest and recuperation (*as of convalescents*); an establishment for *the treatment of the chronically ill.*

Webster's Ninth New Collegiate Dictionary 1040 (9th ed. 1989) (emphasis added).

In regard to the definition of "nursing home", Section 1001 of the Public Welfare Code defines it as:

Any premises operated for profit in which nursing care and related medical or other health services are provided for a period exceeding 24 hours, for two or more individuals, who are not relatives of the operator, *who are not acutely ill and not in need of hospitalization, but who,*

*because of age, illness, disease, injury, convalescence or physical or mental infirmity need such care.*

62 P.S. § 1001 (emphasis added).

Webster's also defines "nursing home" as:

a privately operated establishment where maintenance and personal or nursing care are provided for persons (*as the aged or chronically ill*) who are unable to care for themselves properly.

Webster's Ninth New Collegiate Dictionary 812 (9th ed. 1989) (emphasis added).

■ Permissive terms in zoning ordinance must be construed expansively, so as to afford the landowner the broadest possible use and enjoyment of his land. *Bakerstown Container Corporation; Allegheny Valley School.* Conversely, "[R]estrictions on a property owner's right to free use of his property must be strictly construed and all doubts resolved in his favor." *Gilden Appeal,* 406 Pa. 484, 492, 178 A.2d 562, 566 (1962); *Interim House, Inc. v. Philadelphia Zoning Board of Adjustment,* 36 Pa.Commonwealth Ct. at 64, 387 A.2d at 515.

■ We agree with the trial court that the Zoning Hearing Board committed an error of law by finding the proposed facility a group home. A review of the above definitions convinces us that a skilled nursing facility falls within the definition of a "sanatorium".[5] Both provide treatment and rehabilitation for the aged, chronically ill, convalescents and those with disease. However, unlike a hospital, they do

5. There are numerous common pleas court decisions which have addressed this issue and have held that a nursing or convalescent home is a sanatorium and/or a hospital. *Simon v. Doylestown Borough Zoning Board of Adjustment,* 17 Bucks Co. L.Rep. 103 (1967) (An ordinance which permits a "hospital or sanitarium" authorizes a nursing home use.); *Hunter Realty Co. v. Board of Adjustment of Tredyffrin Township,* 15 Ches. Co. Rep. 299 (1967) (A home for the care of aged persons who require custodial care is a "hospital, sanatorium or similar health facility"); *Linfante v. Norristown Borough,* 87 Montg. Co. L.R. 199 (1966) (A "nursing hospital" for the care of elderly people is permitted as either a "hospital," or a "home," or a "sanatorium"); *Brodsky v. McShain,* 71 Pa. D. & C. 595 (Phila.1948) (A nursing home for convalescents is a "hospital").

not provide diagnosis and treatment of acute injury or illness.

Moreover, a skilled nursing facility does not fall within the category of a group home. The definition of "group home" merely states that it is a residence shared by a number of unrelated persons and is licensed by the state. It says nothing about providing any type of skilled medical care. Furthermore, the concept of a group home has generally been limited to such things as delinquent children, abused women and mentally/physically handicapped persons. *See Walker v. Zoning Board of Adjustment*, 380 Pa. 228, 110 A.2d 414 (1955) (school for children with cerebral palsy is not a sanatorium or hospital); *United Cerebral Palsy Association v. Zoning Board*, 382 Pa. 67, 114 A.2d 331 (1955) (residence for group of men with cerebral palsy is not a sanatorium).

Since we conclude that a skilled nursing facility is a sanatorium within the provisions of the Zoning Ordinance, we now must determine if the Zoning Hearing Board committed an error of law or abused its discretion when it found that Manor failed to meet its burden of proving that the facility would not have a detrimental effect on the community.

A special exception is not an exception to the Zoning Ordinance, but rather a use which is expressly permitted, absent a showing of a detrimental effect on the community. *Johnson v. North Strabane Township*, 119 Pa.Commonwealth Ct. 260, 546 A.2d 1334 (1988); *A.J. Groseck & Associates v. Zoning Hearing Board of Montrose Borough*, 69 Pa.Commonwealth Ct. 38, 450 A.2d 263 (1982). The applicant for the special exception has both the duty of presenting evidence and the burden of persuading the Zoning Hearing Board that the proposed use satisfies the objective requirements of the ordinance for grant of special exception. *Appeal of R.C. Maxwell Company*, 120 Pa.Commonwealth Ct. 251, 548 A.2d 1300 (1988); *Keystone Chemical Company Inc. v. Zoning Hearing Board of*

*Butler Township,* 90 Pa.Commonwealth Ct. 213, 494 A.2d 1158 (1985).

■ Once the applicant has met his burden of proof and persuasion, a presumption arises that it is consistent with the health, safety and general welfare of the community. *Appeal of R.C. Maxwell Company; Kern v. Zoning Hearing Board of Township of Tredyffrin,* 68 Pa.Commonwealth Ct. 396, 449 A.2d 781 (1982). The burden then normally shifts to the objectors of the application to present evidence and persuade the Zoning Hearing Board that the proposed use will have a generally detrimental effect on health, safety and welfare or will conflict with the expressions of general policy contained in the ordinance. *Ralph & Joanne's v. Neshannock Township Zoning Hearing Board,* 121 Pa.Commonwealth Ct. 83, 550 A.2d 586 (1988); *Bray v. Zoning Board of Adjustment,* 48 Pa.Commonwealth Ct. 523, 410 A.2d 909 (1980).

■ However, the Zoning Ordinance may, as here, place the "burden of proof" on the applicant as to the matter of detriment to health, safety and general welfare.[6] *Kern v. Zoning Hearing Board of Township of Tredyffrin; Bray v. Zoning Board of Adjustment.* Such a provision in the Zoning Ordinance however, merely places the persuasion burden on the applicant. The objectors still retain the initial presentation burden with respect to the general matter of the detriment to health, safety and general welfare. *Kern; Bray.*

The trial court found that the Township did not satisfy its initial production burden of showing a general detrimental effect on the community and thus the burden of persuasion did not shift to Manor. (R.R. pp. 423–424). However, the

**6.** Section 193 of the Township's Zoning Ordinance provides that: The applicant for a special exception shall have the burden of proving to the satisfaction of the Zoning Hearing Board that his application falls within the provisions of this ordinance *and that the granting of his application for a special exception will not adversely affect the health, safety or welfare of the community of the Township.* (Emphasis added).
(R.R. p. 452).

Township contends that substantial evidence exists to support the Zoning Board's finding that they met their production burden and that Manor failed to persuade the Zoning Board that a general detrimental effect does not exist. The Township argues that it presented substantial evidence of a detrimental effect including the fact that most of the residents in the nursing facility would be from Philadelphia County, that serious traffic problems would exist as well as problems with sufficient parking. The Township also argued that the proposed facility would have a detrimental effect because it must utilize Township services, such as police, fire, water and sewage.

As previously stated, our scope of review is limited to determining whether the Zoning Hearing Board committed an abuse of discretion or an error of law. *Appeal of M.A. Kravitz Co., Inc.* We may conclude that the Zoning Hearing Board abused its discretion only if its findings are not supported by substantial evidence. *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Valley View Civic Association.* If the record indicates that the findings are supported by substantial evidence, we may not disturb the Board's findings. *Boundary Drive Associates v. Shrewsbury Township*, 507 Pa. 481, 491 A.2d 86 (1985).

The objectors, when presenting evidence, must "raise specific issues concerning the proposal's general detrimental effect on the community before the applicant is required to persuade the fact finder that the intended use would not violate the health, safety and welfare of the community." *Appeal of R.C. Maxwell Company*, 120 Pa.Commonwealth Ct. at 256–257, 548 A.2d at 1303. The objectors cannot meet their burden by merely speculating as to possible harm, but instead must show "a high degree of probability that it will [substantially] affect the health and safety of the community." *In re O'Hara's Appeal*, 389 Pa. 35, 53–54, 131 A.2d 587, 596 (1957); *See also Tuckfelt v.*

*Zoning Board of Adjustment,* 80 Pa.Commonwealth Ct. 496, 500, 471 A.2d 1311, 1314 (1984).

The trial court found that at most, the objectors' testimony amounted to allegations of mere possibilities and fell far short of the "high degree of probability" standard necessary to sustain the objectors' burden of production. (R.R. p. 424). After a review of the relevant testimony we agree with the trial court and find that substantial evidence does not exist to support the Zoning Hearing Board's findings.

Most of the evidence presented by the Township consisted of the testimony of nine neighbors who testified as to the possibility that traffic problems could result from the increased traffic generated by the facility. (R.R. pp. 380–382). The objectors testified that major traffic problems already exist. (R.R. pp. 380–382). The Township did not present any testimony from its Township planner or any other individual qualified on this issue. We find that such speculative testimony from concerned neighbors is insufficient to establish a "high degree of probability" of specific detrimental consequences to the public welfare.

An increase in traffic alone is insufficient to justify the refusal of an otherwise valid land use. *In re O'Hara's Appeal.* The objectors must show a high probability that the proposed use will generate traffic patterns not normally generated by this type of use and that this abnormal traffic will pose a substantial threat to the health and safety of the community. *In re Appeal of Martin,* 108 Pa.Commonwealth Ct. 107, 529 A.2d 582 (1987); *Kern.* Moreover, "the fact that a proposed use would contribute to projected traffic congestion primarily generated by other resources is not a sufficient basis for denying a special exception." *In re Appeal of Martin,* 108 Pa.Commonwealth Ct. at 112, 529 A.2d at 584; *Kern,* 68 Pa.Commonwealth Ct. at 402, 449 A.2d at 784.

Thus, the Township failed in its initial presentation burden and as such, Manor has satisfied all the requirements

for the grant of a special exception. Moreover, even if the Township had satisfied its presentation burden by showing a high probability of harm, a review of the testimony presented by Manor on this issue demonstrates that they sufficiently rebutted the testimony presented by the Township. (R.R. pp. 30–252). Therefore, the Zoning Hearing Board committed an abuse of discretion because their findings are based upon insufficient evidence.

Accordingly, we will affirm the Order of the trial court.

## ORDER

AND NOW, this 15th day of April, 1991, the Order of the Montgomery County Court of Common Pleas dated September 10, 1990, is affirmed.