## DeLuca v. The Zoning Hearing Board of the City of Chester

C.P. of Delaware County, no. 94-03468.

*Joseph Damico,* for appellants.
*John Gallagher,* for appellees.
*Florence F. Wright,* for the intervenors—the City of Chester.
*Robert J. Dixon, solicitor* for the City of Chester.

JENKINS, *J.,* January 24, 1995—

## PROCEDURAL HISTORY

In June/July 1994, the appellants, James DeLuca and Beverlee DeLuca filed an application for special exception to permit the first floor of their property, known as 2300 Providence Avenue, Chester, Delaware County, Pennsylvania, to be used as an educational facility to provide training for individuals with mental health disabilities. On August 25, 1994, the Zoning Hearing Board of the City of Chester, after receiving testimony at a public hearing on July 21, 1994, rendered a decision denying the application. A timely appeal to this court followed. On October 31, 1994, after considering the arguments of counsel for the ZHB and counsel for James and Beverlee DeLuca and reviewing the record certified by the ZHB, this court entered an order reversing the decision of the ZHB and granting the special exception to permit the operation of an educational and training facility on the subject premises. Notwithstanding its absence from all hearings, arguments and/or conferences relative to this matter, the City of Chester, on November 30, 1994, filed an appeal to the Commonwealth Court thus necessitating this opinion.[1]

---

1. Although the City of Chester filed a notice of intervention on September 30, 1994, it did not appear nor participate in any proceedings before either the ZHB or the court of common pleas.

In its appeal, the City of Chester complains as follows:

"(1) The trial court erred in concluding that the applicant had carried its burden of proving that the application for a special exception was not contrary to the public interest or welfare.

"(2) The trial court erred in concluding that the city had the burden of proving that the DeLuca application for a special exception was contrary to the public interest or welfare.

"(3) The trial court erred in concluding that the city had failed to prove that the DeLuca application for special exception was contrary to the public interest or welfare."

Although this court's order does not draw any conclusions directed to the City of Chester (which failed to participate in the proceedings), this court will set forth its reasons for the October 31, 1994 order.

## REASONING

Because no evidence was presented to the court beyond the evidence heard by the zoning hearing board, our review is limited to determining whether the zoning hearing board's decision constituted an error of law or an abuse of discretion. See *e.g., Cassidy v. Zoning Board of Adjustment,* 126 Pa. Commw. 301, 559 A.2d 610 (1989); *Ralph & Joanne's Inc. v. Neshannock Township Zoning Hearing Board,* 121 Pa. Commw. 83, 550 A.2d 586 (1988).

Initially, we note that, because it is undisputed that variances had previously been granted by the ZHB to DeLuca for office use, the only issue before the ZHB was the application for special exceptions as an educational

use. As a result, the ZHB erred in fact and in law when it found, in finding of fact 16, that: "Applicant (DeLuca) failed to carry its burden of proof that, due to physical or geographic circumstances unique to the subject property it cannot be developed in accordance with the present zoning." The burden set forth in finding 16 is the burden of proof for a variance. DeLuca applied for a special exception. The ZHB erred in applying the incorrect burden of proof.

The subject property is zoned R-2. The City of Chester Zoning Ordinance, at section 1345.02(a), pertaining to R-2 districts, permits "any use permitted in an R-1 district." Section 1343.02(f) of the zoning ordinance permits private educational institutions when authorized as a special exception. Thus, private educational uses are permitted in R-2 districts when authorized by special exception.

On May 14, 1992, the City of Chester Zoning Ordinance was amended to define standards for the ZHB with reference to the consideration of special exceptions. (Bill no. 7, ordinance no. 9, 1992.) The amendment, which is now found as part of section 1327.03 of the zoning ordinance, purports to define, not only the standards for review of special exceptions, but also the standards of proof with respect thereto. Specifically, the ordinance states as follows:

"(B) *Standards of Proof*

"(2) For special exceptions

"An applicant for a special exception shall have the burden of establishing both:

"(a) That his application falls within the provisions of this ordinance which affords to the applicant the right to seek a special exception; and

"(b) That the allowance of a special exception will not be contrary to the public interest.[2]

"(3) Evaluation of the impact of an application on the public interest.

"In determining whether the allowance of a special exception or variance is contrary to the public interest, the board shall consider whether the application, if granted, will:

"(a) Adversely affect the public health, safety and welfare due to changes in traffic conditions, drainage, air quality, noise levels, neighborhood property values, natural features, and neighborhood aesthetic characteristics.

---

2. The Commonwealth Court, in *Appeal of Baird,* 113 Pa. Commw. 637, 641, 537 A.2d 976, 978 (1988), *petition for allowance of appeal denied,* 521 Pa. 613, 557 A.2d 344 (1989), stated that when a particular use is submitted in a particular zoning district, "it is presumed that in considering such use for the area, such general matters as health, safety and general welfare and the general intent of the zoning ordinance have been considered. Thus, as an evidentiary matter, this presumption shifts the burden to the protesters to prove that the proposed use will have an adverse effect on the general public. The protesters have the burden of going forward with evidence of noncompliance with general conditions."

A recommendation set forth in a comprehensive plan but not legislated into the zoning ordinance cannot defeat the granting of a special exception. *Schatz v. New Britain Township Zoning Hearing Board of Adjustment,* 141 Pa. Commw. 525, 531, 596 A.2d 294, 297 (1991). "It is axiomatic ... that comprehensive plans do not have the effect of zoning ordinances but only recommend land uses which may or may not eventually be provided by a legally enforceable zoning ordinance." *FPA Corporation Appeal,* 25 Pa. Commw. 221, 225, 360 A.2d 851, 854 (1976).

"(b) Be in accordance with the City of Chester comprehensive plan.

"(c) Provide required parking in accordance with the terms of this ordinance.

"(d) Adversely affect the logical, efficient and economical extension or provision of public services and facilities such as public water, sewers, refuse collection, police, fire protection and public schools.

"(e) Otherwise adversely affect the public health, safety or welfare."

In requesting a special exception, the burden is on the applicant to show that the proposed use complies with the specific requirements set forth in the ordinance regarding the granting of a special exception. *Bray v. Zoning Board of Adjustment,* 48 Pa. Commw. 523, 410 A.2d 909 (1980). Once the applicant has produced evidence to show that a proposed use is within those specific requirements, the burden shifts to those who oppose the special exception to produce evidence in regard to the general, nonspecific and nonobjective requirements set forth in the ordinance that the use will produce an undue burden. *Id.* The objectors, when presenting evidence, must raise specific issues concerning the proposal's general detrimental effect on the community before the applicant is required to persuade the fact finder that the intended use would not violate the health, safety and welfare of the community. *R.C. Maxwell Co. Appeal,* 120 Pa. Commw. 251, 548 A.2d 1300 (1988). The objectors cannot meet their burden by merely speculating as to possible harm, but instead must show a high degree of probability that it will substantially affect the health and safety of

the community. *Manor Healthcare v. Zoning Hearing Board,* 139 Pa. Commw. 206, 590 A.2d 65 (1991). See also, *Tuckfelt v. Zoning Board of Adjustment, City of Pittsburgh,* 80 Pa. Commw. 496, 471 A.2d 1311 (1984).

With these concepts in mind, this court found that the ZHB erred when it concluded that:

(A) Applicant failed to show that this special exception would not be contrary to the public interest. (ZHB finding of fact no. 17.)

(B) Applicant failed to present any testimony that the application would not adversely affect the public health, safety and welfare. (ZHB finding of fact no. 18.)

(C) The applicant failed to prove that the granting of this application would not be detrimental to the health, safety and welfare of the community. (ZHB conclusion of law no. 2.)

At the zoning hearing, DeLuca presented sufficient evidence to demonstrate that the proposed use complies with City of Chester Zoning Ordinance. The Pennsylvania Supreme Court has established a broad definition of the term "education" when that term is used in zoning ordinances. See *Gilden Appeal,* 406 Pa. 484, 178 A.2d 562 (1962). DeLuca presented substantial evidence to demonstrate that the proposed use constitutes a private educational institution pursuant to section 1343.02(f) of the zoning ordinance.

In addition thereto, DeLuca produced substantial evidence to show that the use was not contrary to the public interest nor would it adversely affect the public health, safety or welfare. This evidence included, but was not limited to, the following:

(A) The use will provide an educational and training program designed to teach social and interpersonal skills to students with mental health disabilities. (ZHB N.T. 38.)

(B) The students at the proposed site would be primarily from the City of Chester. (ZHB N.T. 36.)

(C) Most of the students would commute to the site by public transportation. (ZHB N.T. 36.)

(D) There would only be 15-20 students at the site at any one time. (ZHB N.T. 35.)

(E) There will be sufficient parking spaces for those students and employees who choose to drive to the site. (ZHB N.T. 60.)

(F) The employees at the site will be trained to handle any emergencies with the students. (ZHB N.T. 55.)

(G) There will be no overnight programs. The site will operate only during normal business hours. (ZHB N.T. 16, 35.)

(H) Mr. Ziegler, the director of the Horizon House Program, who has been operating a similar program for eight years, testified that the proposed use will not be detrimental to the public health, safety and welfare of the community. (ZHB N.T. 39.)

(I) The following non-residential uses of property exist in the immediate vicinity of the property:

(1) United Way Administrative Offices at 2310 Providence Avenue. (ZHB N.T. 12.)

(2) Veterinary Clinic at the corner of 24th and Providence Avenues. (ZHB N.T. 61.)

(3) Rumford Office Building at Providence Avenue and Chestnut Street. (ZHB N.T. 61.)

(4) Nolan-Fidale Funeral Home, Providence Avenue (three doors away). (ZHB N.T. 61.)

(5) Doctors' offices on three of the corners of Providence Avenue and 22nd Street. (ZHB N.T. 61 and 62.)

(6) Nacrelli Funeral Home—"catty-cornered" to the DeLuca property. (ZHB N.T. 62.)

(7) Commercial Janitorial Services—"catty-cornered" to the DeLuca property. (ZHB N.T. 62.)

After DeLuca presented this evidence, as well as additional testimony, to demonstrate its compliance with the standards set forth in section 1327.03 of the Chester City Ordinance, the objectors, which did not include the City of Chester, failed to produce any evidence regarding specific issues concerning the proposal's alleged detrimental effect on the community.[3] As a result, DeLuca was not required to persuade the ZHB that the intended use would not violate the health, safety and welfare of the community. *R. C. Maxwell Co. Appeal, supra.* Nonetheless, after reviewing the entire record in this matter, we believe that it was an error of law and an abuse of discretion for the ZHB to find the applicant failed to prove that his application would not be detrimental to the health, safety and welfare of the community in light of the overwhelming evidence to the contrary.

For all of the foregoing reasons, we reversed the decision of the ZHB and granted the application for special exception.

---

3. As stated hereinabove, the objectors cannot meet their burden by merely speculating as to possible harm, but instead must show a high degree of probability that it will substantially affect the health and safety of the community. *Manor Healthcare, supra.*