**SENTINEL RIDGE DEVELOPMENT, LLC, As assignee of the interest of Pulte Homes of PA, L.P., Petitioner**

v.

**DEPARTMENT OF ENVIRONMENTAL PROTECTION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 21, 2010.
Decided July 21, 2010.

William D. Auxer, Blue Bell, for petitioner.

William J. Gerlach, Jr., Norristown, for respondent.

John Wilmer, Media, for intervenor Crum Creek Neighbors.

BEFORE: McGINLEY, Judge, and SIMPSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge SIMPSON.

This case involves a storm water permit the Department of Environmental Protection (DEP) issued to Pulte Homes of PA, L.P. the predecessor in interest of Petitioner Sentinel Ridge Development, LLC (Sentinel Ridge). A local community organization appealed the permit issuance to the Environmental Hearing Board (EHB). The EHB conducted hearings and received expert testimony. It issued an order "suspending the permit" and remanding the matter to DEP for further factual inquiry. Sentinel Ridge appeals the EHB's order to this Court, essentially arguing the EHB's decision was not supported by scientific evidence. DEP argues, among other things, that the EHB's order is not a final order, and that the appeal should be quashed. For the reasons discussed below, we agree with DEP and we quash the appeal.

Sentinel Ridge prepared plans to construct a residential development on a 34.88 acre site in Marple Township, Delaware County. The site is largely wooded and sits on top of a ridge bounded on the south, west and east by steep slopes of approximately 100 feet.

The base of the site is framed by surface streams. Holland Run, on the east side, flows into Crum Creek, which is on the west side. Approximately half of the run-off water from the site flows downhill to the east. Various springs and drainage paths on the eastern slope of the site drain into Holland Run.

Portions of both Crum Creek and Holland Run are classified as warm water fisheries. A portion of Holland Run is classified as an exceptional value (EV) stream.

Sentinel Ridge applied for a permit for storm water discharges associated with construction of the development. In con-

junction with the permitting process, Sentinel Ridge prepared a Post–Construction Storm Water Management Plan (Plan). Sentinel Ridge designed the Plan to protect the structural integrity of the surrounding watershed, to preserve it from degradation, and to maintain its existing uses. The Plan called for construction of five recharge basins, two detention basins, three rain gardens, seven water quality structures, six vegetated swales, porous pavement, parking stalls and dry wells.

DEP examined the Plan, concluding that it would not result in the direct discharge of storm water into the EV portion of Holland Run. Accordingly, DEP issued a permit.

A local community organization, Crum Creek Neighbors (CCN), which is dedicated to protecting Crum Creek and its tributaries, appealed DEP's issuance of the permit. CCN argued the permit violated the Clean Streams Law and DEP regulations.[1] The EHB conducted hearings on the appeal.

CCN presented the expert testimony of civil engineer Michele C. Adams. Adams' expertise is in storm water management and site design. She wrote significant portions of DEP's best management practices manual (BMP Manual). Adams questioned the methodology used by Sentinel Ridge's experts in designing the system. She challenged Sentinel Ridge's use of differing modeling methodologies for different types of storms, instead of using the same methodology across the storms. Adams testified this use of multiple methodologies distorted data as to the actual ability of these basins to handle larger storms. Adams testified that the system would not be able to handle the rain volume and rate of larger size storms (5 year/24 hour and 100 year/24 hour storms). Consequently, water would discharge from the basins, cascading down slope into Holland Run. She testified that this would result in down gradient and downstream harm to Holland Run.

CCN also presented the testimony of James Schmid, Ph.D., an ecologist specializing in wetlands and habitat evaluation. Schmid testified that he examined the site and its trees, wetlands and vegetation. He also testified that he performed a study of life in the EV portion of Holland Run, as well as in the finger tributary, which revealed diverse and extensive organisms consistent with its high quality classification.

Schmid opined, based in part on Adams' evaluation, that the A–1 infiltration system would inhibit the flow of water to the tributary. In particular, he noted that an underground, perforated pipe, in the vicinity of A–1, would likely intercept ground water recharge water that would otherwise flow to the finger tributary. He opined that a decrease in the flow of water to the tributary would adversely impact the life within it, which would, in turn, adversely impact the EV portion of Holland Run.

The EHB also heard from several experts from Sentinel Ridge and from DEP, each of whom refuted the opinions of CCN's experts. No party presented hydrogeologic testimony.[2]

---

1. Section 1 of The Clean Streams Law, Act of June 22, 1937, P.L. 1987 *as amended*, 35 P.S. § 691.1, defines pollution as including "contamination by alteration of the physical, chemical or biological properties of … waters, or change in temperature, taste, color or odor thereof, or the discharge of any liquid, gaseous, radioactive, solid or other substances into such waters." DEP regulations require "exceptional value waters" to be "maintained and protected" and also protect existing stream uses and water quality to maintain those uses. 25 Pa.Code § 93.4a.

2. Hydrogeology is the science of water flow in the subsurface, which, among other things, involves the flow of ground water into surface

The EHB found CCN's experts credible that water would overflow in heavy storms, discharging surface water. The EHB provided several bases in support of its credibility findings, noting in particular Adams' background in drafting DEP's standards in the BMP Manual. The EHB also found credible the calculations she made, and her explanations of these calculations. The EHB noted that Sentinel Ridge's own expert acknowledged the basins would only be able to handle a two-year storm.

The EHB acknowledged that the design met DEP guidelines. However, the EHB disagreed with DEP's position that meeting particular DEP guidelines necessarily classifies the system as the nondischarge alternative under antidegradation regulations. 25 Pa.Code § 93.4c(b)(1)(i). The EHB concluded that DEP erred in treating the site as a nondischarge site.

The EHB indicated that it was not hinting that Sentinel Ridge's system needed to be redesigned. The EHB clarified that it was only asking DEP to review this case under the proper analysis, that is, that there will be discharges in the current system in heavier storms.

The EHB rejected CCN's request that the permit be revoked. The EHB noted that the parties discussed hydrology, the flow of water on the surface, but that there was no evidence as to hydrogeology, the flow of subsurface water. The EHB directed DEP to utilize its discretion and expertise, to further investigate the hyrdogeologic aspects of the EV portion of Holland Run.

Sentinel Ridge appealed the EHB's decision to this Court raising two primary issues: (1) whether the EHB's decision was supported by sufficient scientific evidence; and (2) whether the EHB erred in shifting the burden of proceeding with the evidence to Sentinel Ridge and DEP. This Court directed the parties to address in their briefs whether this Court has jurisdiction to hear the case because of the remand nature of the order. We address this threshold issue first.

Sentinel Ridge contends that the EHB's order is a final order pursuant to Pa. R.A.P. 341(b) because it disposes of all claims by all parties following a full evidentiary hearing. Alternatively, Sentinel Ridge argues it may appeal pursuant to Pa. R.A.P. 311(f) because the issues in the case would evade appellate review if an immediate appeal is not allowed. Sentinel Ridge argues the issues as to the sufficiency of the scientific evidence produced by CCN have been fully decided by the EHB and would be irreparably lost if the Court allows the remand.[3]

DEP argues the EHB's order is not a final order under Pa. R.A.P. 341. DEP also contends that Sentinel Ridge's alternative argument fails because the issues will not evade appellate review if heard at a later time.

In examining these arguments, we note at the outset that a final order is any order that: (1) disposes of all claims and of all parties; or (2) is expressly defined as a final order by statute; or (3) is specifically

---

streams. In contrast, hydrology is "The science and study of underground water resources and the study and treatment of aboveground water, its systems and cycles. Hydrology pertains to the science of surface water and ground water, whereas hydrogeology focuses on ground water." Robert C. Ransom, Interpretive Glossary of Water–Related Terms and Expressions at 40 (last edited April

8, 2010), available at *http://interpretive groundwaterglossary.com/, cited in* DEP Br. at 7 n. 1–2.

**3.** This Court granted CCN's motion to intervene. CCN in its brief adopts Sentinel Ridge's arguments why this Court is able to hear the present appeal.

entered for purposes of granting interlocutory review of particular issues in this case. Pa. R.A.P. 341. A party may appeal as of right from an order remanding a matter to an administrative agency if the order remanding the matter decides an issue which would evade appellate review or if the remand does not require the exercise of administrative discretion. Pa. R.A.P. 311(f).

▇▇▇ In this case, the EHB order is not a final order or an otherwise appealable interlocutory order. The EHB's order neither disposed of all claims nor intended to allow for interlocutory review. Additionally, we are not persuaded by Sentinel Ridge's alternative argument that an appeal should be allowed under Pa. R.A.P. 311(f) because the issues presented in this case would evade appellate review.

In this case, the EHB suspended the permit and remanded the case for DEP to conduct additional fact finding. This is not a ministerial task. DEP will use its expertise and discretion to further investigate the hydrogeologic aspects of the site as relates to the project's impact on the EV portion of Holland Run.

After DEP conducts its review, it will either restore the permit or revoke it. Any aggrieved party can then appeal. The EHB can then review the permit in light of the additionally gained information. The issues here relating to the overflow and to the hydrogeology can then be fully addressed with a fully developed record.

We contrast this case with *Department of Environmental Resources v. Big B Mining Co., Inc.*, 123 Pa.Cmwlth. 591, 554 A.2d 1002 (1989), another case in which this Court asked the parties to address whether an EHB order, which included a remand, was final. The case involved a regulation that protected high quality waters from degradation. The regulation authorized discharges that would impact a stream if certain conditions were met. A mining company applied to the Department of Environmental Resources (DER) for a permit based on the regulation. The DER concluded the mining company did not satisfy the two conditions which would allow stream degradation; accordingly, it issued a permit with effluent levels that did not allow for any stream degradation. On appeal, the EHB reversed, concluding that the mining company satisfied the requirements of the regulation and that some stream degradation was allowed. The EHB remanded the matter for DER to recalculate effluent limitations.

DER appealed, and this Court questioned whether the EHB's order was appealable. We concluded the EHB finally determined that the mining company satisfied the regulation requirements, and that determination would not change on remand. Therefore, the Court concluded the final determination of regulation satisfaction could be reviewed.

In contrast, in this case, the EHB did not finally address any aspect of the permit. The EHB specifically indicated that it was not revoking the permit, but that it was not "particularly receptive ... based on the existing record" to "simply approv[ing] the permit and dismiss[ing] the appeal." EHB Dec. at 18. Rather, the EHB accepted many of the concerns and questions raised by CCN and its experts as to the methodologies used by Sentinel Ridge and DEP, and has remanded the matter for further evaluation of the permit under appropriate methodologies.

Further, it is not clear what will occur upon further evaluation by DEP. Thus, it is not clear what will happen with the permit, why it will happen, and which party, if any, will be aggrieved. Under these circumstances, the EHB order is not final and reviewable.

In sum, we conclude that the EHB order is neither a final order nor an interlocutory order that presents issues that would evade appellate review. Accordingly, we are without jurisdiction to entertain this appeal. For the above reasons, we quash Sentinel Ridge's appeal.

### ORDER

**AND NOW**, this 21st day of July, 2010, the appeal of Petitioner in the above captioned matter is **QUASHED.**

Jurisdiction relinquished.