IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Geryville Materials, Inc. | : | |
| | : | |
| v. | : | No. 118 C.D. 2020 |
| | : | Argued: December 7, 2020 |
| Zoning Hearing Board of Lower | : | |
| Milford Township and Lower | : | |
| Milford Township | : | |
| | : | |
| Appeal of: Lower Milford Township | : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge[1]
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE MICHAEL H. WOJCIK, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED:  January 8, 2021

Lower Milford Township (Township) appeals the order of the Lehigh County Court of Common Pleas (trial court) that granted in part, and denied in part, its appeal of the decision of the Zoning Hearing Board of Lower Milford Township (Board) denying the special exception application of Geryville Materials, Inc. (Geryville) to develop a quarry, with accessory uses of a ready-mix concrete plant and a hot asphalt plant, on a 628.483-acre lot located in the Township's Agricultural-Rural Zoning District (AR District), and reversed the Board's decision and remanded the matter to the Board for further hearings.[2]  We quash the appeal.

---

[1]The decision in this case was reached before January 4, 2021, when Judge Leavitt served as President Judge.

[2] As this Court has explained:
**(Footnote continued on next page…)**

**(continued…)**

A special exception is neither special nor an exception, but rather a use expressly contemplated that evidences a legislative decision that the particular type of use is consistent with the zoning plan and presumptively consistent with the health, safety and welfare of the community. *Greth Dev. Grp., Inc. v. Zoning Hearing Bd. of L. Heidelberg Twp.*, 918 A.2d 181 (Pa. Cmwlth. 2007). Further, as Robert S. Ryan explains:

> Zoning boards often hear protestants argue that an applicant for a special exception should be required to observe the law as set forth in the zoning ordinance. That argument is appropriate in an application for a variance, but not in a case involving a special exception. The applicant for an exception *is* following the zoning ordinance. His application is one envisioned by the ordinance and, if the standards established by the ordinance are met, his use is one permitted by its express terms.

Robert S. Ryan, PENNSYLVANIA ZONING LAW AND PRACTICE, §5.1.1 (2001) (emphasis in original).

An applicant for a special exception has both the duty of presenting evidence and the burden of persuading the [Board] that its proposed use satisfies the objective requirements of the zoning ordinance for the grant of the special exception. *Manor HealthCare Corp. v. L. Moreland Twp. Zoning Hearing Bd.*, 590 A.2d 65 (Pa. Cmwlth. 1991). Once the applicant meets its burdens of proof and persuasion, a presumption arises that the proposed use is consistent with the health, safety and general welfare of the community. *Id.* The burden then normally shifts to the objectors to present evidence and persuade the [Board] that the proposed use will have a generally detrimental effect on health, safety and welfare. *Id.* The evidence presented by the objectors must show, to a high degree of probability, that the use will generate adverse impacts not normally generated by this type of use and that these impacts will pose a substantial threat to the health and safety of the community. *Greaton Props., Inc. v. L. Merion Twp.*, 796 A.2d 1038 (Pa. Cmwlth. 2002).

**(Footnote continued on next page…)**

The tortured history of this case may be summarized, in relevant part, as follows. Geryville is the equitable owner of 8 parcels comprising the 628.483-

---

**(continued…)**

\* \* \*

In *Bray*[*v. Zoning Board of Adjustment*, 410 A.2d 909 (Pa. Cmwlth. 1980)], we . . . explained the requirement that an applicant bears the burden of both persuasion and the initial duty to present evidence "to show that the proposal complies with the 'terms of the ordinance' which expressly govern such a grant." *Id.* at 910. This rule means the applicant must bring the proposal within the specific requirements expressed in the ordinance for the use (or area, bulk, parking or other approval) sought as a special exception. Those specific requirements, standards or "conditions" can be classified as follows:

> 1. The kind of use (or area, bulk, parking or other approval)—i.e., the threshold definition of what is authorized as a special exception;
>
> 2. Specific requirements or standards applicable to the special exception—e.g., special setbacks, size limitations; and
>
> 3. Specific requirements applicable to such kind of use even when not a special exception—e.g., setback limits or size maximums or parking requirements applicable to that type of use whenever allowed, as a permitted use or otherwise.

*Id.* at 911.

*Protect PT v. Penn Township Zoning Hearing Board and Apex Energy (PA), LLC* (Pa. Cmwlth., Nos. 39-42 C.D. 2018, filed November 8, 2018), *appeal denied*, 210 A.3d 269 (Pa. 2019) (*Apex*), slip op. at 7-9 (emphasis in original). *See also* Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a) ("Parties may also cite an unreported panel decision of this court issued after January 15, 2008, for its persuasive value, but not as binding precedent.").

3

acre lot located in the Township's AR District because the agreements of sale are contingent on the approval of Geryville's special exception application. On August 25, 2004, Geryville filed an application for a special exception to use all of the acreage for the primary quarry use and the related accessory uses.

Between 2004 and 2009, there were over 40 Board hearings on the 2004 application. On June 18, 2009,[3] Geryville submitted a revised application to develop just approximately 86 of the acres on the parcel before the Township enacted an amendment to the Zoning Ordinance prohibiting the quarry use in the AR District on July 20, 2009. The Board scheduled a final hearing on the 2004 application during its August 26, 2009 meeting[4] and voted to deny the application

---

[3] In a separate action, on June 19, 2009, Geryville submitted a revised preliminary development plan with the Township's Planning Commission consistent with the 2004 revised special exception application to develop only 86 of the acres on the property. The Township's Planning Commission held 20 hearings between 2009 and 2011, ultimately rejecting the revised plan. The Commission rejected the plan because: (1) it treated the 86 acres as 1 parcel when it was actually 3 parcels; (2) the plan only addressed the 86 acres and not the total 628 acres of property; and (3) the plan did not comply with the natural resource requirements of the Zoning Ordinance. On appeal to the trial court, Geryville argued that the natural resource provisions of the Zoning Ordinance were preempted by the Pennsylvania Noncoal Surface Mining Conservation and Reclamation Act (Noncoal Act), Act of December 19, 1984, P.L. 1093, *as amended*, 52 P.S. §§3301-3326. The trial court affirmed the Commission's decision, but this Court reversed and remanded on further appeal. *See Geryville Materials, Inc. v. Planning Commission of Lower Milford Township*, 74 A.3d 322, 329 (Pa. Cmwlth. 2013). This Court held that the Noncoal Act preempted the relevant Zoning Ordinance provisions; the parcel upon which Geryville sought to develop the quarry was contiguous for purposes of the Zoning Ordinance; and Geryville was not required to submit a preliminary plan for the use of the entire property. *Id.*

[4] During the pendency of the application proceedings, the Supreme Court issued *Glen-Gery Corporation v. Zoning Hearing Board of Dover Township*, 907 A.2d 1033 (Pa. 2006), which permitted void *ab initio* challenges to ordinances based on alleged procedural defects in their enactment even though the 30-day statutory deadline for a contest had passed. On July 26, 2007, Geryville filed a procedural challenge to the validity of some sections of the Zoning Ordinance. The Board denied the challenge, the trial court affirmed the Board's decision, and **(Footnote continued on next page…)**

at the hearing's conclusion. In its written decision, the Board noted Geryville's concession during the hearing that its plans could not comply with Section 471 of the Township's Zoning Ordinance, relating to limitations to alterations of land in flood plains, wetlands, and woodlands, and standards for land containing steep slopes, watercourses, lakes, and ponds. The Board also concluded that Geryville submitted insufficient evidence to satisfy Section 523 of the Zoning Ordinance containing specific standards to obtain a special exception for mineral extraction.

Geryville appealed the Board's decision to the trial court, arguing that: (1) the Board abused its discretion in refusing to continue its consideration of the application; (2) the Board improperly applied the natural resource protections in Sections 470 through 472 of the Zoning Ordinance to the application; and (3) the Board abused its discretion or capriciously disregarded evidence in determining that Geryville presented insufficient evidence to satisfy the Section 523 standards. The trial court rejected Geryville's arguments and affirmed the Board's decision, and this Court affirmed on further appeal, relying on the trial court's opinion. *See Geryville Materials, Inc. v. Zoning Hearing Board of Lower Milford Township* (Pa. Cmwlth., No. 1852 C.D. 2011, filed September 7, 2012), slip op. at 3.[5]

---

**(continued…)**

this Court affirmed the trial court's order on further appeal. *See Geryville Materials, Inc. v. Lower Milford Township Zoning Hearing Board*, 972 A.2d 136, 139-145 (Pa. Cmwlth. 2009). The Board decided to proceed with hearings on the Application while the foregoing litigation was wending its way through the courts.

[5] In 2004, Geryville had also filed a substantive validity challenge to Sections 470 and 523 of the Township's Zoning Ordinance, which prompted more than 40 hearings over 8 years before the Township's Board of Supervisors. Ultimately, in 2012, the Board of Supervisors denied the challenge. On June 11, 2013, on appeal, the trial court affirmed the decision in part, and reversed in part, finding that Sections 523.1 through 523.11 of the Zoning Ordinance, except **(Footnote continued on next page…)**

5

Subsequently, on August 10, 2016, Geryville submitted the final version of the plan to use approximately 84 acres of the property for the quarry and associated accessory uses. More than 62 Board hearings were conducted over 9 years on Geryville's application for a special exception. Lori Sickenberger appeared as one of the objectors (Objectors). All parties presented the testimony of numerous experts, lay witnesses, and exhibits in support of, and in opposition to, the application. Ultimately, on December 19, 2018, the Board issued a decision denying the application for a special exception, concluding that Geryville "has not met its burden and has failed to establish with credible, reliable evidence, that the special exception application satisfies all of the objective requirements of [the] Township Zoning Ordinance of 1997," and that even if Geryville "had satisfied the burden of meeting all of the objective requirements of the Ordinance, the evidence offered by the Objectors is sufficient to establish that the proposed quarry and accessory uses will cause harm and damage to the health, safety, and general welfare of the community . . . ." Reproduced Record (R.R.) at 1233a. On January 14, 2019, Geryville appealed the Board's decision to the trial court.

Following argument, on December 31, 2019, the trial court issued an order and opinion granting in part, and denying in part, Geryville's appeal, and reversing and remanding the matter to the Board for further hearings. Specifically, the trial court rejected Geryville's assertion that the Board erred in denying the

(continued…)

for Section 523.5, were preempted by the Noncoal Act, but holding that the provisions of Section 470 were valid and enforceable. On further appeal, this Court affirmed that trial court's order based on the trial court's opinion. *See Geryville Materials, Inc. v. Board of Supervisors of Lower Milford Township* (Pa. Cmwlth., Nos. 1051 C.D. 2013, 1097 C.D. 2013, filed June 18, 2014), slip op. at 4.

6

application based on Geryville's failure to present sufficient evidence to satisfy the requirements of Section 411.10 of the Township's Zoning Ordinance,[6] holding that the designation of where the accessory use regarding the storage of quarry rock on the property is a locational factor that is within the Township's decision-making authority. As the trial court explained:

> The only evidence offered in relation to this section came from one of Geryville's engineers who testified quarried rock, which was going to be processed at the site in the asphalt or concrete plant, was going to be stored on the property in piles outside of any structures. [R.R. at 1222a]. There was not any other evidence elicited regarding the proposed location on

---

[6] Section 411.10 of the Township's Zoning Ordinance states, in relevant part:

The placement of a[n] . . . accessory building or use, shall be subject to the following requirements:

* * *

Outside storage for a nonresidential use, other than storage as a primary or principal use of the land, necessary and incidental to the normal operation of a primary or principal use, subject to the following provisions:

(a) [N]o minimum required yard area shall be used for outdoor storage.

(b) No more than twenty-five (25) percent of the lot area shall be used for outdoor storage.

(c) Outdoor storage areas shall be shielded from view from public streets. A planted buffer shall be provided along any property boundary adjoining an existing residential use or land zoned for residential uses.

R.R. at 1236a.

Geryville's property at which these rock stockpiles would be located, whether the piles would be shielded from view from public streets and residential neighborhoods, or whether Geryville intended to locate the rock piles on more than 25% of the overall land area. While Geryville claims the decision about where to store the rock awaiting processing is an operational consideration, and therefore preempted by the [Noncoal Act], the Court finds the specific designation of where an accessory *use* such as the storage of rock on the property is a locational factor, well within the decision-making authority of a local municipality. Accordingly, Geryville's appeal based on the alleged abuse of discretion by the [Board] to deny the special exception application due to Geryville's failure to abide by the requirements of Section 411.10 is **DENIED**.

R.R. at 1473a (emphasis in original).

However, the trial court reversed the Board's decision and remanded the matter to the Board with respect to Geryville's purported failure to satisfy the requirements of Section 471(c) of the Township's Zoning Ordinance.[7] In this

---

[7] Section 471(c) states:

c. Steep slopes. On all land designated as having a slope of eight (8) percent or more as delineated on a detailed topographical map taken from field surveys and giving elevations at intervals not exceeding two (2) feet and prepared by a land surveyor or engineer licensed in the State of Pennsylvania and bearing his seal, the following standards shall apply:

(1) 8% to 15%. No more than forty percent (40%) of such areas shall be altered, regraded, cleared or built upon.

(2) 15% to 25%. No more than thirty percent (30%) of such areas shall be altered, regraded, cleared or built upon.

(3) 25% or steeper. No more than fifteen percent (15%) of such areas shall be altered, regraded, cleared or built upon.

**(Footnote continued on next page…)**

8

regard, the trial court noted that the Board found that Geryville failed to satisfy this requirement because its expert engineering witness testified that he measured the slopes on the property by computer program rather than by actually walking the property to measure the slope angles of the various elevations. R.R. at 1474a. The trial court also noted that, by contrast, the Township's expert testified that topographical analysis that Geryville submitted failed to accurately identify various water courses on the property, and Objectors submitted an approved 1989 subdivision plan for the property that included an on-foot field survey, which contradicted the slope estimates provided by Geryville's expert. *Id.* at 1474a-1475a. The trial court further noted that the Board determined as incredible and unreliable all additional tables and maps that Geryville submitted in support of the application. *Id.* at 1475a.

The trial court explained that while Section 471(c) does not define the term "field survey," the Board erroneously imposed the requirement that a field survey under Section 471(c) must be conducted by physically walking the property rather than through the use of other methods such as the use of drones or aerial surveillance. R.R. at 1475a-1477a. The trial court also noted that more than 20 years had passed between the approved 1989 subdivision plan relied upon by the

---

**(continued…)**

> (4) Areas of steep slopes that are less than three thousand (3,000) square feet shall be counted with the flattest adjacent slope classification.
>
> (5) The above regulations do not apply to disturbance of soil for agricultural or food production purposes.

R.R. at 1237a-1238a.

9

Board and when Geryville's land survey was conducted. *Id.* at 1476a-1477a. The trial court held:

> Because the Board retains the sole discretion to make credibility determinations, [] the Board was within its regulatory authority to reject Geryville's evidence. Nonetheless, this does not change the fact that the Board's basis for rejecting the field survey was not supported by the Zoning Ordinance. Therefore, the Board's denial of Geryville's application is **REVERSED** and **REMANDED** back to the Board on the limited and specific issue of allowing new testimony related to topographical analysis of the property related to Geryville's compliance with the slope requirements found under Section 471(c).[7]
>
> * * *
>
> [7] Despite the fact that the Board referred to other natural resource preservation provisions found in Sections 471[(a)]-471[(i), *see* R.R. at 1201a-1206a], the Board only cited Geryville's alleged violation of the language of Section 471[(c)] as the basis for denying Geryville's special exception application. [*See* R.R. at 1223a-1227a]. As a result, the Board is limited in its reconsideration of Geryville's special exception application to compliance with Sections 411.10(c) and 471(c).
>
> * * *
>
> Because the [Board] imposed a requirement on [Geryville] with respect to the conduct of a "field survey" which was not set forth in the Zoning Ordinance, the Court finds that the Board erred in requiring [Geryville] to submit a field survey conducted by an on-foot survey of the land. As a result, the Decision of the [Board] is **REVERSED AND REMANDED** for further proceedings limited to the issue of Geryville's satisfaction of Sections 471(c) and 411.10(c) of the Zoning Ordinance.

10

*Id.* at 1477a, 1485a (citation omitted and emphasis in original).

On January 27, 2020, the Township filed the instant appeal from the trial court's order[8] purportedly as of right pursuant to Pa. R.A.P. 311(f)(2),[9] asserting that if an appeal is not permitted, the fact that the Board appropriately denied Geryville's application for failing to satisfy the requirements of the Zoning Ordinance will evade appellate review. On March 19, 2020, Geryville filed a Motion to Quash the appeal because it is an appeal from an interlocutory order. On May 6, 2020, following argument, this Court entered an order directing that the Motion to Quash shall be listed for disposition with the merits of the appeal.[10]

In general, as this Court has stated:

> Ordinarily, a final order is any order that disposes of all claims and of all parties or is expressly defined as a final order by statute. Appeals are permitted only from final orders so as to prevent piecemeal determinations

---

[8] "Because the parties presented no additional evidence after the [Board's] decision, our review is limited to determining whether the [Board] committed an abuse of discretion or an error of law. *Allegheny Tower Assocs., LLC v. City of Scranton Zoning Hearing Board*, 152 A.3d 1118 (Pa. Cmwlth. 2017)." *Apex*, slip op. at 5-6 n.3.

[9] Pa. R.A.P. 311(f)(2) states, in pertinent part:

> **(f) Administrative remand.--**An appeal may be taken as of right from: (1) an order of a common pleas court . . . remanding a matter to an administrative agency . . . for execution of the adjudication of the reviewing tribunal in a manner that does not require the exercise of administrative discretion; or (2) an order of a common pleas court . . . remanding a matter to an administrative agency . . . that decides an issue that would ultimately evade appellate review if an immediate appeal is not allowed.

[10] By June 26, 2020 order, this Court denied Geryville's Application for Remand to the trial court to correct a purported ambiguity in the trial court's order and opinion remanding this matter to the Board.

11

and the consequent protraction of litigation. The general rule that a final order is required before an appeal may be taken is fundamental to the exercise of jurisdiction by the appellate court and is rigorously applied.

*Brophy v. Philadelphia Gas Works*, 921 A.2d 80, 86 (Pa. Cmwlth. 2007) (citations omitted).

With regard to disposing of the instant Motion to Quash, this Court has stated:

We acknowledge that this Court has permitted immediate appeals from interlocutory orders pursuant to [Pa. R.A.P.] 311(f)(2) in cases in which the lower tribunal decided the merits of the case before remanding it for further action. *See Vanvoorhis v. Shrewsbury* [*Township*], 176 A.3d 429 (Pa. Cmwlth. 2017) (an order that settles the only point of contention between the parties before remand is immediately appealable); *see also Schultheis v.* [*Board*] *of Supervisors of Upper Bern* [*Township*], 727 A.2d 145 (Pa. Cmwlth. 1999) (immediate review granted where trial court decided the merits before remanding the matter); [*Department of Environmental Resources v. Big B Mining Co., Inc.*, 554 A.2d 1002 (Pa. Cmwlth. 1989)]; G. Ronald Darlington, Kevin J. McKeon, Daniel R. Schuckers, Kristen W. Brown and Patrick Cawley, 20 West's Appellate Practice §311:133 (2018-2019 ed.) (where the remand order directs a particular outcome or forecloses issues, it is appealable under Rule 311(f)(2)). However, where the [Environmental Hearing Board (EHB)] did not direct the outcome of [the Department of Environmental Protection's (DEP)] permitting decision, such that "it is not clear what will occur upon further evaluation by DEP[,] . . . what will happen with the permit, why it will happen, and which party, if any, will be aggrieved[,]" the EHB's order was not immediately reviewable. [*Sentinel Ridge Development, LLC v. Department of Environmental Protection*, 2 A.3d 1263, 1267 (Pa. Cmwlth. 2010) (the EHB's remand for DEP to use its expertise and discretion to further investigate a proposed project's impact calls for more than a ministerial task)];

12

> *see also Mangan v. City of Carbondale Zoning Hearing* [*Board*] (Pa. Cmwlth., No. 1143 C.D. 2011, filed June 27, 2012) (where the trial court's order did not decide the merits before remand, there was no issue capable of evading review).

*Sunoco Partners Marketing and Terminals, L.P. v. Clean Air Council*, 219 A.3d 280, 294 (Pa. Cmwlth. 2019) (*Sunoco Partners*) (footnote omitted).

Likewise, in this case, it is not clear what will happen to the special exception application on remand to the Board, why it will happen, and which party will be aggrieved by the Board's decision. After receiving this additional evidence, the Board could reject it as not credible, again relying on the conflicting evidence presented by the Township and Objectors,[11] and deny Geryville's application for failing to comply with Sections 411.10(c) and 471(c) of the Zoning Ordinance. Additionally, even if Geryville presents sufficient credible evidence in this regard, the Board could again deny the application because "the evidence

---

[11] As we have explained:

> The [Board] is the sole judge of the credibility of witnesses and the weight afforded their testimony. It is the function of the [Board] to weigh the evidence before it. This Court may not substitute its interpretation of the evidence for that of the [Board]. Assuming the record contains substantial evidence, we are bound by the [Board's] findings that result from resolutions of credibility and conflicting testimony rather than a capricious disregard of evidence.

> Further, [the Board] is free to reject even uncontradicted testimony it finds lacking in credibility, including testimony offered by an expert witness. [The Board] does not abuse its discretion by choosing to believe the opinion of one expert over that offered by another.

*Apex*, slip op. at 7 (citations omitted).

offered by the Objectors is sufficient to establish that the proposed quarry and accessory uses will cause harm and damage to the health, safety, and general welfare of the community . . . ." R.R. at 1233a. In either event, the Township would not be aggrieved by the Board's decision.[12]

Accordingly, the Motion to Quash is granted, and the instant appeal is quashed.

_____
MICHAEL H. WOJCIK, Judge

---

[12] The Township's reliance on *Schultheis* to support a contrary conclusion is misplaced. As noted in *Sunoco Partners*, the trial court in *Schultheis* determined on the merits that the deficiencies in a preliminary subdivision plan were "relatively minor," and remanded the matter to permit the applicant to file a revised plan, so that future appellate challenges could only relate to the *revised* preliminary plan. *Schultheis*, 727 A.2d at 147-48. In contrast, in this case, the trial court merely rejected the Board's rationale for discrediting Geryville's evidence offered in support of the requirements of Sections 471(c) and 411.10(c) of the Zoning Ordinance, and remanded the matter to permit Geryville to submit evidence supporting these requirements. Unlike *Schultheis*, the trial court did not "decide[] the merits before remanding the matter." *Sunoco Partners*, 219 A.3d at 294.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Geryville Materials, Inc.      :
          :
          v.          : No. 118 C.D. 2020
          :
Zoning Hearing Board of Lower  :
Milford Township and Lower     :
Milford Township           :
          :
Appeal of: Lower Milford Township  :

# **O R D E R**

AND NOW, this 8th day of January, 2021, Geryville Materials, Inc.'s Motion to Quash is GRANTED, and the above-captioned appeal is QUASHED.

_____
MICHAEL H. WOJCIK, Judge